JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

A.B. and individual

**(b)** County of Residence of First Listed Plaintiff   PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Prince P. Holloway, Esquire
Stampone O'Brien Dilsheimer Law
500 Cottman Avenue

### DEFENDANTS
Wyndham Hotels and resorts, Inc.
OM SRI SA Inc d/b/a Howard Johns by Wyndham

County of Residence of First Listed Defendant   Poconos, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☒ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 USC 1595A

Brief description of cause:
Sexual Trafficking

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
10,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  10/6/23

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. **(See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _Camp Hill, PA_

Address of Defendant: _1779 N. 9th Street Bartonsville, PA 18321_

Place of Accident, Incident or Transaction: _1779 N. 9th Street Bartonsville, PA 18321_

---

**RELATED CASE IF ANY:**
Case Number:_____ Judge:_____ Date Terminated_____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐ No ☐
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court?   Yes ☐ No ☐
3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court?   Yes ☐ No ☐
4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual?   Yes ☐ No ☐

I certify that, to my knowledge, the within case ☐ is / ☑ **is not** related to any now pending or within one year previously terminated action in this court except as note above.

DATE:_____   _____   _____
                         *Attorney-at-Law* <span style="color:red">*(Must sign above)*</span>   *Attorney I.D. # (if applicable)*

---

**Civil (Place a √ in one category only)**

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts)
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Wage and Hour Class Action/Collective Action
6. ☐ Patent
7. ☐ Copyright/Trademark
8. ☐ Employment
9. ☐ Labor-Management Relations
10. ☐ Civil Rights
11. ☐ Habeas Corpus
12. ☐ Securities Cases
13. ☐ Social Security Review Cases
14. ☐ Qui Tam Cases
15. ☑ All Other Federal Question Cases. *(Please specify):* 22 U.S.C. 7102(17) & 18 U.S.C. 1591(a)

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):*_____
7. ☐ Products Liability
8. ☐ All Other Diversity Cases: *(Please specify)*_____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, _Prince P. Holloway_ , counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _10/6/23_   _____   _____
                  *Attorney-at-Law* (Sign here if applicable)   *Attorney ID # (if applicable)*

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

05/2023

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

A. B.                                                          :        CIVIL ACTION
                                                              :
                              v.                              :
                                                              :
Wyndham Hotels & Resorts, Inc.                               :        NO.
et al                                                         :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for
plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of
filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse
side of this form.) In the event that a defendant does not agree with the plaintiff regarding said
designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on
the plaintiff and all other parties, a Case Management Track Designation Form specifying the track
to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                               ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (✓)

10/6/23 _____          ___RH_____          ___Plaintiff_____
**Date**                     **Attorney-at-law**         **Attorney for**

215-663-0400                 215-663-9112                 PHolloway@stamponelaw.com

**Telephone**                **FAX Number**               **E-Mail Address**

(Civ. 660) 10/02


American LegalNet, Inc.
www.FormsWorkFlow.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANNIA**

| | |
|---|---|
| A.B. an individual,<br><br>                        Plaintiff,<br><br>        v.<br><br>WYNDHAM HOTEL & RESORTS, INC.;<br>AND OM SRI SA, INC., *doing business as*<br>Howard Johnson by Wyndham<br>Bartonsville/Poconos Area.<br><br>                        Defendants. | Case No. 2:23-cv-<br><br>**JUDGE _____**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

COMES NOW, the Plaintiff A.B. ("Plaintiff" or "A.B."), by and through her undersigned

counsel, and respectfully submits her complaint for damages and makes the following averments.

## INTRODUCTION

1.      Plaintiff A.B. is a survivor of human sex trafficking.

2.      A.B.'s life story reads like a tragedy wherein she was forced to endure violence,

trauma, exploitation, manipulation, threats, isolation, humiliation, and degradation.

3.      A.B. met a person that groomed her into trafficking. Ultimately, her trafficker came

to control every aspect of her life. The defining factor of the relationship between A.B. and her

trafficker was that each night A.B.'s trafficker forced her to have sex with men for money.

4.      A.B. was trafficked at Defendants Wyndham Hotel & Resorts, Inc. ("Wyndham")

and Om Sri Sa, Inc., d/b/a as Howard Johnson by Wyndham Bartonsville/Poconos Area ("Howard

Johnson")s' property[1]. A.B. and her trafficker rented hotel rooms for one purpose—a location to engage in sex trafficking.

5.      At Defendants' hotel, A.B. was forced to engage in sex with many men every day. Every new customer was another instance A.B. was forced to have sex against her will—that is to say, A.B. was raped multiple times per day by multiple men when she stayed at Defendants' hotel.

6.      A.B.'s trafficker forced her onto Defendants' properties where she was repeatedly raped and forced to perform commercial sex acts with "buyers" under threats of physical and psychological abuse.

7.      At some point, A.B. was able to escape the grasps of her trafficker and the prison of Defendants' hotel rooms.

8.      A.B. has spent a considerable amount of time attempting to regain the life that was stripped away from her as a result of her trafficking.

9.      A.B. brings this lawsuit in an attempt to hold Wyndham and Howard Johnson accountable imprisoning her and benefiting from participating in a venture furthering her trafficking.

## OVERVIEW OF TRAFFICKING

10.      A significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

11.      For decades, sex traffickers have brazenly operated in and out of hotels throughout this country. While traffickers indiscreetly paraded throughout hotels, hospitality giants stood on

---

[1] Defendant Wyndham is engaged in a joint venture with Om Sri Sa, Inc. Throughout this Complaint, Plaintiff will refer to aspects as it pertains specifically to Wyndham and will name Wyndham as a Defendant and also refer to both Wyndham and Om Sri Sa, Inc. as "Defendants."

the sidelines and did nothing. Instead, hotels and motels paid only lip service to campaigns against sex trafficking and stood by collecting millions in profits from their trafficking ventures.

12.     Wyndham knew and should have known for decades that sex trafficking repeatedly occurs under its brand flags.

13.     Rather than taking timely and effective measures to thwart this epidemic, Wyndham chose to ignore the open and obvious presence of sex trafficking on their branded properties, benefitting from the profit and fees created by rooms rented for this explicit and apparent purpose.

14.     The sex trafficking industry alone pulls in an estimated $99 billion each year, making it the second largest illicit trade after the sale of all illegal drugs.[2] However, traffickers aren't the only profiteers. The hotel industry, including Defendants, makes millions from participating in ventures by renting rooms where trafficking victims are sexually exploited night after night. Hotels and traffickers have a mutually beneficial relationship, fueled by the sexual exploitation of victims.

15.     The hotel industry ignored human trafficking on their premises and thereby enabled human trafficking in the United States to flourish.

16.     Defendants and other members of the hospitality industry are and have long been aware of the prevalence of human trafficking, particularly sex trafficking, at hotels in general and at Wyndham's hotels worldwide and at their own properties. Defendants and others in the industry have access to much public information on the prevalence of human trafficking at hotels, including reports by, among others, the Polaris Project created for the use of the hospitality industry.

---

[2] *Profits and Poverty: The Economics of Forced Labor,* INTERNATIONAL LABOR ORGANIZATION (2017), https://www.ilo.org/global/topics/forced-labour/statistics/lang--en/index.htm.

17.     The hospitality industry, speaking through industry organizations, has in recent years been increasingly vocal about its supposed "unified commitment" to combat human trafficking. Unfortunately, the near-total lack of concrete action by Defendants and the rest of the hospitality industry shows that the industry in fact has a "unified commitment" to the very opposite:   continuing with business as usual, so that Defendants and all industry participants continue to profit millions from participating in a commercial venture by renting rooms for human trafficking.

18.     Defendants' decision to prioritize profits over protecting sex trafficking victims resulted in the repeated sexual exploitation and rape of A.B. on their properties.

19.     A.B., a survivor of sex trafficking, brings this action for damages against Defendants pursuant to the Trafficking Victim Protection Reauthorization Act, 18 U.S.C. § 1595. Defendants knowingly benefitted from participation in a commercial business venture that they knew or should have known to be engaging in sex trafficking acts in violation of 18 U.S.C. § 1591(a).

## **PARTIES**

20.     Plaintiff A.B. is a natural person and a resident and citizen of Camp Hill, PA.

21.     Plaintiff is a victim of trafficking pursuant to 22. U.S.C. § 7102(17) and 18 U.S.C. § 1591(a), and a victim of a "severe form of trafficking" as defined under 22 U.S.C. § 7102(16).

a.     Due to the sensitive and intimate nature of the issues, Plaintiff A.B. requests that this Court grant a protective order pursuant to Fed. R. Civ. P. 26(c) to permit her to proceed under a pseudonym and to ensure that Defendants

maintain the confidentiality of Plaintiff's identity throughout the pendency of this lawsuit and after.[3]

b.      Generally, under the Federal Rules of Civil Procedure, pleadings must state the name of all parties.[4] However, there are exceptions when the issues involved are of a sensitive and highly personal nature.[5] For good cause, the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.[6]

c.      Here, granting pseudonym status and proceeding under seal is warranted because this litigation will involve the disclosure of stigmatizing sexual information, including rape. Plaintiff fears the stigma from her family, friends, employer, and community if her true identity is revealed in the public record.

d.      Plaintiff should not be compelled to disclose her identity in order to maintain her privacy and safety. Plaintiff's privacy interest substantially outweighs the customary practice of judicial openness.[7]

---

[3] In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings under Fed. R. Civ. P. 16(b), and to issue protective orders limiting disclosure of the party's name under Fed. R. Civ. P. 26(c), to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).

[4] Fed. R. Civ. P. 10(a).

[5] A district court must balance the need for anonymity against the general presumption that the parties' identities are public information and the risk of unfairness to the opposing party. *See, e.g., M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir.1998); *James v. Jacobson*, 6 F.3d at 238 (4th Cir. 1993); *Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir.1992); *Doe v. Stegall*, 653 F.2d at 186 (5th Cir.); *see also Doe v. Frank* at 323 (11th Cir. 1992) (holding that a plaintiff should be permitted to proceed anonymously in cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity).

[6] Fed. R. Civ. P. 26(c).

[7] *Does I thru XXIII, 214 F.3d* at 1068 (joining its 4th, 5th, 10th, and 11th sister circuits in holding that a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity).

e.    Moreover, Defendants will not be prejudiced. Plaintiff will agree to reveal her identity to Defendants for the limited purpose of investigating Plaintiff's claims once the parties have entered into a protective order. Plaintiff simply seeks redaction of Plaintiff's personal identifying information from the public docket and assurances that Defendants will not use or publish Plaintiff's identity in a manner that will compromise her safety, personal life, personal relationships, or future employment prospects.

22.    **Defendant Wyndham Hotel & Resorts, Inc.** ("Wyndham") is a large hotel brand with nearly 9,000 branded properties worldwide. Wyndham is a Delaware corporation with its principal place of business in Parsippany, NJ.

23.    Wyndham maintains a registered agent in Ohio, and it can be served through its registered agent, Corporate Creations Network, Inc., at 119 E. Court Street, Cincinnati, OH 45202.

24.    Wyndham is the successor entity to Wyndham Worldwide Corporation and retains successor liability for the wrongful acts of its predecessor. Where applicable, references to Wyndham in this Complaint refer also to Wyndham Worldwide Corporation.

25.    Wyndham owned, supervised, managed, controlled, and/or operated the Howard Johnson located at 1779 N 9th St, Bartonsville, PA 18321 ("Bartonsville Howard Johnson").

a.    The Howard Johnson is a Wyndham brand property.[8]

b.    Wyndham employees worked throughout the Bartonsville Howard Johnson by Wyndham. Wyndham employees worked jobs including front desk and housekeeping. Wyndham is the principal with control over nearly every element of operations at the Bartonsville Howard Johnson by Wyndham. Wyndham is

---

[8] *Our Brands,* Wyndham Hotels, https://www.wyndhamhotels.com/wyndham-rewards/our-brands (last visited September 27, 2022).

liable, either directly, vicariously, or indirectly through an agency relationship for acts and/or omissions of the employees at its branded hotels, including the Bartonsville Howard Johnson by Wyndham where A.B. was trafficked. Wyndham has an actual and apparent agency relationship with Howard Johnson, the physical property owners of the Bartonsville Howard Johnson by Wyndham, as to establish vicarious liability.

c. Wyndham controlled and dictated the actions and inactions of Howard Johnson through highly specific and detailed brand standards, policies, and procedures.

d. Wyndham knowingly benefited, or received something of value, from its venture with Howard Johnson at the Bartonsville Howard Johnson by Wyndham through royalty payments, licensing fees, and percentages of the gross room revenue generated by the hotel operations, including rates charged through rooms where A.B. was trafficked, as well as in maintaining a positive public image for the Bartonsville Howard Johnson by Wyndham. Wyndham also benefited from gathering personal data from the Wi-Fi it provided to customers including A.B. and her traffickers.

e. Wyndham is subject to the jurisdiction of this Court because it regularly conducts business in Pennsylvania, including through the operation of numerous hotels in Pennsylvania, such as the Bartonsville Howard Johnson by Wyndham, contracting to supply services in Pennsylvania. Wyndham has derived substantial revenue from services rendered in Pennsylvania, has caused injuries to A.B. in Pennsylvania, and profited from a commercial business venture with Howard Johnson which unlawfully permitted criminals to sell A.B. for

commercial sex at the Bartonsville Howard Johnson by Wyndham.

f.   Whenever reference is made in this Complaint to any act, deed, or conduct of Wyndham, the allegation is that Wyndham engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Wyndham.

26.   Defendant Om Sri Sai, Inc., doing business as Howard Johnson by Wyndham Bartonsville/Poconos Area ("Howard Johnson"), is a Pennsylvania corporation and is one of Defendant Wyndham's Howard Johnson by Wyndham branded properties. Defendant Howard Johnson was involved in the staffing and operation of the Bartonsville Howard Johnson hotel located at 1779 N 9th St, Bartonsville PA 18321 where the Plaintiff was trafficked for sex. Through its relationship with Defendant Wyndham and the perpetrator who trafficked A.B. at the Bartonsville Howard Johnson, Defendant Howard Johnson knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking. Defendant Howard Johnson  may be served with service of process at its registered address, 1150 Banksville Rd, Pittsburgh, PA 15216.

## JURISDICTION AND VENUE

27.   This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

28.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(d).

## FACTUAL BACKGROUND

### INTRODUCTION

8

29.     A.B. brings her claims against a major hotel brand corporation and it's agent for violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA") 18 U.S.C. § 1595(a).

30.     The TVPRA prohibits Defendants from engaging in any venture they knew or should have known involves trafficking, and thereby establishes a non-delegable duty of reasonable care to detect and avoid participation in and benefiting from what they know or should know involves trafficking.

31.     An overwhelming majority of commercial sex trafficking transactions occur within hotels and motels, as traffickers use their rooms as the hub for their operations.[9] Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex.

32.     Hotels offer anonymity, non-traceability, privacy, and discretion, making them ideal venues for sex trafficking.

33.     As part of its conspiracy, to save costs and continually reap millions of dollars in profits, Wyndham generally failed to create, adopt, implement, and enforce company-wide policies and procedures regarding human trafficking (or suspected) at their branded property. Furthermore, Wyndham did not train staff how to identify and respond to suspected human trafficking, failed to require training of all employees on human trafficking policies and procedures, and failed to conduct audits confirming Howard Johnson's compliance with policies and procedures.

34.     Wyndham kept no reports or data on suspected incidences or occurrences of human trafficking on its properties, the rate at which those occurrences changed as a result of implementing human trafficking policies and procedures, or the number of rooms that Wyndham

---

[9] Bradley Myles, *Combating Human Trafficking in the Hotel Industry*, HUFFINGTON POST (Jul. 22, 2015), https://www.huffpost.com/entry/combating-human-trafficking-in-the-hotel-industry_b_ 7840754 .

refused to rent or refunded as a result of identifying the venture as one engaged in trafficking. Wyndham did not establish mandatory and secure reporting mechanisms at the point of sale.

35.     With little to no risk posed to traffickers seeking to use Defendants' rooms as a location to force victims like A.B. to engage in commercial sex against their will, the sex trade continues to thrive at Wyndham's branded properties. Everyday victims of human trafficking like A.B. are repeatedly exploited within the rooms of Wyndham's branded properties across the country.

36.     Plaintiff's injuries are indivisible and cannot be separated. Plaintiff's injuries are the result of continued instances of ongoing violent traumatizing sexual exploitation.

37.     Wyndham and Howard Johnson are jointly and severally liable for the Plaintiff's damages in this case.

## THE SEX TRAFFICKING OF PLAINTIFF A.B.

38.     A.B. met her trafficker when she was eighteen (18) years old.

39.     By means of a combination of force, coercion, violence, threats, manipulation, compelled use of and dependency on illegal substances, control over identification documents, and deprivation of basic survival necessities such as, but not limited to, food, water, transportation, shelter, and clothing, A.B. was held captive and sold for sex by her trafficker.

40.     During the time she was trafficked, A.B.'s trafficker frequently rented rooms at the Bartonsville Howard Johnson because the rooms provided convenient, anonymous, and relatively central locations for "johns" that would pay to engage in sex with A.B.

41.     Throughout her trafficking, A.B.'s trafficker connected with "johns" by posting or causing to be posted advertisements on Backpage and Craigslist advertising for A.B.'s availability

for commercial sex. A.B.'s trafficker posted many of these advertisements and had conversations with "johns" while connected to Defendants' Wi-Fi.

42.     A.B. was forced to have sex with multiple "johns" every day she was trafficked in the Bartonsville Howard Johnson.

43.     While at the Bartonsville Howard Johnson, A.B.'s trafficker violently attacked and beat her, and psychologically tormented her by withholding food and water, all to ensure that she could not escape.

44.     During her captivity at the Bartonsville Howard Johnson, A.B. was raped, continuously abused physically and verbally, malnourished, psychologically tormented, kidnapped, and imprisoned.

45.     A.B. encountered the same staff on multiple occasions. Defendants' staff would have seen the signs of A.B.'s deterioration brought on by the abuse perpetrated by her trafficker, including bruising and physical and verbal abuse.

46.     The trafficker of A.B. followed a repetitive and routine procedure during stays at the Wyndham's Bartonsville Howard Johnson to which Defendants knew or should have known of A.B.'s trafficking because of a variety of factors detailed below.

47.     A.B. was trafficked at the Bartonsville Howard Johnson located at 1779 N 9th St, Bartonsville, PA 18321. A.B. stayed at this location from February 2013 to September 2013, living at this location.

48.     Each and every day, A.B.'s trafficker interacted with the Bartonsville Howard Johnson by Wyndham staff. The property owner provided free rooms to A.B.'s trafficker in exchange for sex with A.B. and other women being trafficked at this location. He warned A.B.'s trafficker when law enforcement was on the property.

49.     The staff at the Bartonsville Howard Johnson by Wyndham observed A.B. on countless occasions where it was physically apparent that she was routinely being brutally beaten. She appeared bruised, emaciated, unwashed, sleep deprived and distraught in front of hotel staff.

50.     A.B. constantly was loudly yelling and fighting with her trafficker, begging for someone to help her at all hours of the day and night. Yet no one from the Bartonsville Howard Johnson by Wyndham came to A.B.'s rescue.

51.     Police regularly showed up to the Bartonsville Howard Johnson due to trafficking activity and physical violence towards other victims from the numerous traffickers staying at this location.

52.     Further, with each stay at Bartonsville Howard Johnson by Wyndham, it resulted in several consistent red flags, including, but not limited to: Paying for stays in cash; Paying for extended stays on a day-by-day basis; Obvious signs of illegal drug use; Frequent requests for linen changes; Unusually large number of used condoms left in the trash; Large numbers of male visitors asking for A.B. and/or her trafficker at the front desk; Physical abuse in public spaces; Visible signs of prior or private physical abuse; Loud noises of abuse or other emergency audible to staff or other rooms; Unusually large numbers of male visitors coming in and out of A.B.'s room; women wearing clothing inappropriate for the weather; and loitering/soliciting on hotel grounds.

53.     Plaintiff was repeatedly raped and otherwise sexually abused hundreds of times at the Bartonsville Howard Johnson by Wyndham.

54.     These red flags were open and obvious to anyone working at the Bartonsville Howard Johnson by Wyndham and lasted consistently for two years.

## DEFENDANTS' KNOWLEDGE OF SEX TRAFFICKING AT WYNDHAM'S BRANDED LOCATIONS

55.     Wyndham is aware that the hospitality industry is a major life source of the human trafficking epidemic both in the U.S. and abroad.[10] The United Nations,[11] international non-profits,[12] and the U.S. Department of Homeland Security,[13] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels. Wyndham cannot help but be aware of the public outcry against human trafficking, especially when so much of the uproar surrounds its industry.

56.     For example, in 2004 End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotel-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour; (2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for its hotel name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms

---

[10] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

[11] *Global Report on Trafficking in Persons*, UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), 84 8available at https://www.unodc.org/documents/data-and-analysis/tip/2021/GLOTiP_2020_15jan_web.pdf; See also *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners*, UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html

[12] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[13] Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

57.     Further, nationwide campaigns have recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign[14] and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[15] These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

58.     Wyndham, on information and belief, has access to individual hotel location do-not-rent ("DNR") lists provided by their agents, such as Howard Johnson, that often list reasons for the refusal to rent, including the suspicion of human trafficking.  Wyndham nevertheless does not share such information with other hotel locations, thereby preventing other hotel locations from acting to protect the victims of such suspected human traffickers.

59.     Defendants also have access to public police reports, news reports, and internal reports generated by customers and employees, regarding sex trafficking at their own hotel locations in particular.

60.     Defendants have access to reviews left by guests on websites such as www.tripadvisor.com, www.yelp.com, www.google.com, and others, wherein guests frequently

---

[14] *The Blue Heart Campaign,* UNITED NATIONS (2022),
https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heino us%20crime.
[15] *DHS Blue Campaign Five Year Milestone*, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015),
https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.

14

complain about the prevalence of obvious prostitution, hearing physical violence by pimps, and other signs of human trafficking.

61.     A brief examination of just a handful of examples suffices to show the extraordinary frequency with which Defendants have long received and continues receiving evidence and reports that human trafficking runs rampant at its hotel locations:

  a.  Regarding a stay in September 2016 at the Bartonsville Howard Johnson by Wyndham, a hotel customer wrote a review saying, "Worst stay of my life. The people were awful, the worker at the front desk was the rudest lady I have ever met, there were prostitutes when we checked in, the building smelled like cigarettes and weed. I wouldn't tell my worst enemy to stay here. The rooms were disgusting, the bedding was dirty and smelled, the room smelt like mold, the bathroom was dirty. This place should be shut down."

  b.  Regarding a stay in September 2016 at the Bartonsville Howard Johnson by Wyndham, a hotel customer wrote a review saying, "WORST STAY OF MY LIFE. We drove over 10 hours to get to Pennsylvania, for a friends wedding. When we got there we were exhausted and were expecting a nice room to rest in before the festivities. When we got to the hotel, the front desk attendant was not helpful at all, and was very rude. The card that i had on file did not work at the hotel, along with 2 others that we tried, which was strange cause they worked at every other place i used them. Nonetheless, we got our room keys and went to our room to relax. When we got the back door to get into our wing, a prostitute came running down the halls with a cigarette in her mouth and nothing on but a towel to open the door...strange. we walked in,

and went to our hotel room, which smelt like mold, was not clean, and very unsightly. The bed was uncomfortable, the shower was broken, and there were water stains on the ceiling. the breakfast was bad, there were people smoking weed down the hall from us, the workers there were very un-friendly and to be quite honest, kind of scary... i would never reccomend this hotel to my worst enemy, and would never even consider staying at a howard johnson hotel again. I am surprised that none of my belongings got stolen. this place should be shut down!!!!! Rating this hotel as terrible would be a compliment...."

c.   The Bartonsville Howard Johnson's property owner and manager were convicted of sex trafficking in 2022 and the location permanently closed.[16]

## DEFENDANTS FACILITATED THE TRAFFICKING OF A.B.

62.   Wyndham is a signatory of the Code[17] and thereby have promised to adopt these policies to combat trafficking. Yet, Wyndham, upon information and belief, has failed to implement most, if not all of these policies.

63.   Wyndham is a face and signatory to the ECPAT anti-trafficking knowledge, guidance, and information necessary to prevent human trafficking, and Wyndham publicly committed to participate in the programs shown to assist in identifying and preventing sex trafficking inside its brand hotels. Therefore, Wyndham should not only have created effective Brand standards for implementation, mandates, and operations, but also enforced them.

---

[16] https://www.justice.gov/usao-mdpa/pr/hotel-owner-two-hotel-companies-sentenced-sex-and-drug-trafficking-monroe-county
[17] *See Our Code Members,* ECPAT, https://www.ecpatusa.org/code-members

64.     Defendants profited from the sex trafficking of Plaintiff A.B. Defendants rented rooms to A.B.'s trafficker when they knew, or should have known, that human trafficking was prevalent within Wyndham's branded properties and at the specific location where A.B. was trafficked. The hotel staff, especially front desk staff, at Defendants property knew or should have known of the obvious signs of A.B.'s trafficking.

65.     Defendants benefited from the steady stream of income that A.B.'s trafficker and "johns" bring to its hotel.. Defendants profited from each and every room that A.B.'s trafficker and customers rented.

66.     Wyndham has made a public commitment to combat human trafficking, thus, is aware that trafficking is a common problem in the hospitality industry, and should have ensured that knowledge was shared with Howard Johnson. Defendants should have been aware of human trafficking occurring at the locations where A.B. was trafficked given Wyndham had access to information, such as police reports, news articles, complaints, and negative reviews regarding the specific locations and surrounding areas.

67.     Moreover, Defendants repeatedly collected data on A.B., her trafficker, and her "johns" from her many stays at Bartonsville Howard Johnson by Wyndham, including but not limited to room reservations, identification and payment information, data from websites visited on Wi-Fi, and other guest data. Defendants' employees witnessed the obvious signs of A.B.'s trafficking including signs of abuse, frequent male visitors coming in and out of the room, condoms in the trash, loud yelling and fighting, and others. Despite having access to all this information for years, Defendants failed to take reasonable measures to stop sex trafficking from occurring in its hotels. If Defendants would have taken proper measures, A.B. and other victims like her, would not have been trafficked at their location.

68.     Wyndham discussed, developed, and implemented uniform policies and procedures to identify, prevent and mitigate the risk of human trafficking occurring at their properties, including the hotels where A.B. was trafficked. These policies included ongoing communication with its local hotels, such as Howard Johnson, by including articles about human trafficking in newsletters, announcements at annual conferences, alerts to hotels in high-risk areas or in proximity to high-risk events, and field-based associates who visit hotels specifically to discuss human and sex trafficking issues.

69.     Pursuant to these policies, branded location employees and property management, such as Howard Johnson, regularly reported customer data and other indicators of trafficking including suspicious criminal activity, web data indicating use of commercial sex websites, and data associated with reservations. The staff at the properties where A.B. was trafficked and Howard Johnson reported this to Wyndham or would have if Wyndham did not fail to institute reasonable policies and procedures.

70.     In addition, Wyndham had access to much of this data through the management of centralized data systems it required the branded properties to use, including but not limited to the property management, booking, credit processing, and information technology and internet systems. These systems, which Wyndham required its branded properties to use, were defective in ensuring customer safety and, specifically, identifying and mitigating suspected and actual incidents of human trafficking on Wyndham's properties.

71.     A reasonably diligent hotel brand in Wyndham's position would have included policies and procedures to identify and mitigate guest safety issues related to human trafficking in its franchise agreements, brand standards, and systems standards. Upon information and belief, Howard Johnson would have expected this material to be included in Wyndham policies and

procedures. By failing to include such policies and procedures, Wyndham led the branded property to be negligently managed by Howard Johnson.

72.     Instead, Wyndham negligently required Howard Johnson to adopt injurious procedures that allowed trafficking to continue and thrive at Defendants' properties, such as failing to accurately identify customer complaints that raise red flags of trafficking and take meaningful steps to address them. Wyndham provided and operated defective systems for daily property operations, management, policies, procedures, and training that were incapable of determine whether defendants were generating revenue as a result of renting rooms where victims of trafficking were harbored and sold for commercial sex.

73.     Defendants voluntarily undertook and assumed a duty to protect the safety of guests at the branded property where Plaintiff was trafficked, such as security, criminal activity, food safety, emergency response protocols, and fire equipment, among others.

74.     Wyndham did not exercise reasonable due diligence and care in selecting corporations, such as Howard Johnson, to operate its branded properties. Wyndham failed to conduct background checks and additional investigations to identify customer safety and security risks. Wyndham failed to conduct investigations such as background checks background and additional due diligence to identify whether they sold and licensed their systems and brands to a company able to secure customer safety and security risks.

75.     Wyndham negligently designed the layout and structure of the branded unit or approved the layout and design of the interior or exterior of the hotel property so that red flags of human trafficking were hidden.

76.     Defendants failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to prevent sexual exploitation on its properties. Wyndham maintained its deficiencies to maximize profits by:

a. Failing to mandate and minimizing costs of training employees and managers on how to spot the signs of human trafficking and sexual exploitation;

b. Lowering operating costs and management costs by failing to analyze the data they received regarding criminal activity and customer reviews that indicated sex trafficking was occurring and taking the steps necessary to remedy the problems;

c. Collecting and utilizing massive amounts of data from all of its branded locations for marketing and other profit-driven purposes but failing to utilize this same data to combat sex trafficking in its hotels;

d. Failing to refuse room rentals, or report guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers;

e. Failing to monitor and track guest wireless network use for illicit commercial sex purposes or digital activity associated with human trafficking.

f. Failing to institute proper security measures, including, but not limited to, employing qualified security officers or appropriate cybersecurity measures to actively combat human trafficking and sexual exploitation; and

g. Failing to use its power as a parent company hold the franchisees accountable for contributing to the prevalence of sex trafficking on its

properties.

77.    As a direct and proximate result of these egregious practices on the part of Wyndham and Howard Johnson, A.B. and victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

## WYNDHAM'S CONTROL OVER ITS BRAND HOTELS

78.    In the hotel industry, Wyndham is a major hotel corporation that holds, owns, manages, and operates trademarks, licenses, and standard operating systems for hotel brands. A a parent companies with decades of expertise in the hotel industry, Wyndham provides property owners with standard operating systems that control the daily operations and management of Wyndham's branded properties.

79.    Upon information and belief, it is a standard practice in the hospitality industry, followed by Wyndham, for parent companies to set exacting brand quality standards reaching everything from the temperature at which coffee shall be served, to the number of pillows that shall be placed on each bed, to the types of funds accepted, to when, where and how guests should be greeted.

80.    Wyndham provides their branded properties with signage on and in front of the building intended to assure customers that, if they check into that hotel, they can expect an experience consistent with the standards of the parent hotel brand.  The same brand is emblazoned on everything in the hotel, from the pens on the bedside table to the staff uniforms at the front desk.

81.    Wyndham provides their branded properties brand name recognition, a marketing campaign, and hotel listings in the Global Distribution System (GDS) and other online travel agency databases, as well as with access to its brand-wide central reservation systems, 800

numbers, revenue management tools, brand loyalty programs, and company websites. Thus, booking and room reservations are to a substantial extent controlled by Wyndham in addition to Howard Johnson.[18] Wyndham sees booking and reservation trends, including for the branded hotel where Plaintiff was trafficked.[19]

82.     The staffing decisions at the individual hotel locations are sufficiently controlled by Wyndham as to render staff at those locations' agents and joint employees of the brand manager Wyndham and Howard Johnson. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 972 (S.D. Ohio 2019).

83.     The staff at individual locations, including Howard Johnson at the location at which A.B. was trafficked, took affirmative actions, as agents of the Wyndham, to provide lodging to individuals who the staff and the Defendants knew or should have known were engaged in human trafficking, therefore, upon information and belief, Wyndham is vicariously liable.

84.     Upon information and belief, Wyndham requires their branded hotel properties to use a property management system, which is linked to Wyndham's corporate network and data center, for, among other things, receiving reservations, and processing credit card transactions internet and technology, and guest safety.

85.     Essentially, Wyndham provides a hotel in a box. Branded property owners, such as Howard Johnson, only provide the physical property, while Wyndham provides everything else required to operate and manage the hotel down to the minute details of daily operation. Branded properties must follow Wyndham's strict standards to receive the right to operate one of Wyndham's brands.

---

[18] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (Apr. 10, 2018), https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel- industry/.
[19] Where a branded hotel allows cash to be accepted for payment, monitoring and auditing these trends are important to identifying locations where criminal activity and commercial sex trafficking may be occurring.

86.     Upon information and belief, per the relevant franchise agreements,[20] Wyndham may enforce their brand standards by means of periodic inspections of its brand hotel locations to monitor compliance. If Wyndham branded properties fail to comply with Wyndham standards, Wyndham penalizes properties with fees, backed up with the ultimate threat of termination of the franchise agreement.

87.     Wyndham exercises day-to-day control over the Bartonsville Howard Johnson by Wyndham in conjunction with Howard Johnson and its other brand hotels through centralized corporate systems, training, policies, and brand standards. Wyndham implements and retains brand hotel control over, including control over the Bartonsville Howard Johnson by Wyndham where A.B. was trafficked, as either direct subsidiaries or under the terms of its franchise agreements.

88.     Upon information and belief, Wyndham controls the operations of its branded properties through a variety of means enforced through franchise agreements and related contracts, including but not limited to:

     a.   Requiring the branded locations to use Wyndham's property management system;

     b.   Requiring branded locations, such as Howard Johnson, to keep audit reports and other records;

     c.   Conducting regular inspections, quality assurance evaluation reports, and audits for compliance with franchise agreement terms and Wyndham's corporate policies;

     d.   Gathering reports of data generated by branded locations, such as Howard Johnson, including reservation, payment, and occupancy information through

---

[20] Most franchise disclosure documents, which outline the policies and procedures of franchise agreements, can be accessed publicly for free by making an account on https://fddexchange.com/view-fdd-docs.

Wyndham's centralized systems;

e.   Requiring the brands, such as Howard Johnson, to regularly report data regarding customer feedback to Wyndham;

f.   Providing marketing requirements and standardized marketing services for the branded locations;

g.   Regulating the all the policies, procedures, and standards of the branded properties from the front desks to the bathrooms;

h.   Requiring branded hotels to use approved vendors for internet services or other requirements for Wi-Fi access, security, filtering;

i.   Providing training and orientation materials for branded property staff which upon information and belief, Howard Johnson would be expected to utilize;

j.   Requiring branded locations, such as Howard Johnson, to make modifications to the branded properties upon Wyndham's request and to refrain from make substantial changes to the branded property without Wyndham's permission;

k.   Requiring branded properties, such as Howard Johnson, to comply with Wyndham's Human Rights Policy and other laws;

l.   Regulating the rates for room rentals; and

m.  Insurance coverage requirements.[21]

89.     Wyndham and Howard Johnson jointly employ all staff located at the Bartonsville Howard Johnson by Wyndham where A.B. was trafficked.

90.     Wyndham manages corporate and branded property training, policies, and procedures on human trafficking, cybersecurity, guest preferences, reward programs, internet

---

[21] *See e.g.* 2014 Franchise Disclosure Document https://fddexchange.com/wp-content/uploads/2014/03/Days-Inn-Franchise-Disclosure-Document-FDD-July-12-2012.pdf

access, hotel furniture, amenities, food and beverage, cleanliness, and/or other hotel brand related policies published and communicated via property management systems to Howard Johnson with back-end management by Wyndham.[22]

91.    Wyndham controls uniform and required reservation, marketing, customer support systems and royalty programs at its branded hotels through national press releases, newsletters, emails, announcements on Wyndham's website, and mentions across its corporate media channels.[23]

92.    Through its national sales team, Wyndham controls the credit processing system and the centralized direct billing at its brand hotels, including the Bartonsville Howard Johnson by Wyndham where A.B. was trafficked.[24]

93.    Wyndham mandates branded properties source through Wyndham's global distribution system.[25] Wyndham mandates the use of specific vendors and suppliers for the purchase of goods and services at its brand hotels, including the Bartonsville Howard Johnson by Wyndham where A.B. was trafficked.[26]

94.    Wyndham regulates property rate, inventory availability, and overall revenue management for the branded locations by monitoring hotel booking data for trends and patterns.[27]

95.    Wyndham manages its branded properties through its Oracle Hospitality OPERA Cloud Property Management System.[28] Wyndham's Development and Sourcing teams negotiate

---

[22] *Our Brands*, WYNDHAM HOTELS, https://www.wyndhamhotels.com/wyndham-rewards/our-brands (last visited Jun. 15 2022).
[23] *Benefits of Partnering with Wyndham Hotels & Resorts,* WYNDHAM HOTELS, https://development.wyndhamhotels.com/the-wyndham-advantage/ (last visited Jun. 15, 2022).
[24] *Id.*
[25] *Benefits of Partnering with Wyndham,* WYNDHAM, https://development.wyndhamhotels.com/the-wyndham-advantage/ (last visited Jun. 20, 2022).
[26] *See e.g., id* ("[Our goal is to ensure the design and construction of your hotel is as seamless as possible, guided by the appropriate brand standards.")
[27] Id.
[28] *Wyndham Implements Oracle Hospitality OPERA Cloud Property Management in its Full-Service Hotels,*

contracts on behalf of brands for hotel infrastructure, operating supplies and equipment and food and beverage.[29]

96.     Wyndham sets and controls Wi-Fi qualifications and/or Wi-Fi qualified service providers, language and policy used on internet landing pages, thresholds for cybersecurity, filtering and/or other guest internet protections, systems used to monitor customer reviews and responses, and other systems related to the daily operations at its brand hotels, including the Bartonsville Howard Johnson by Wyndham where A.B. was trafficked.[30]

97.     Wyndham is the employer of the staff at its branded properties. For example, Wyndham posts all hotel jobs on its parent website.[31] Wyndham is also responsible for setting the core values and culture for all Wyndham employees.[32] In addition, Wyndham sets forth policies for, and provides employee benefits.[33]

98.     Wyndham first adopted a Human Rights Statement in 2007. According to the updated 2018 policy, Wyndham promises to comply with human rights laws and standards and has "accountability mechanisms" in place to monitor and report on compliance. Brand locations are required to comply with human rights and "operating standards." Failure to comply can result in the termination of the franchise agreement.[34]

## CAUSE OF ACTION AGAINST ALL DEFENDANTS

## COUNT 1: 18 U.S.C. § 1595 ("TVPRA")

---

HOTEL TECHNOLOGY NEWS (May 18, 2021), https://hoteltechnologynews.com/2021/05/wyndham-implements-oracle-hospitality-opera-cloud-property-management-in-its-full-service-hotels/

[29] *Supra* n 103

[30] *Leveraging technology to deliver an exceptional guest experience,* WYNDHAM (Summer 2021) 4, https://developmentsupport.wyndham.com/files/8516/2869/4484/Tech-Guide-Q3-2021.pdf

[31] *Join the Wyndham Family,* WYNDHAM, https://careers.wyndhamhotels.com/ (last visited Jun. 22, 2022)

[32] *About Wyndham,* WYNDHAM, https://careers.wyndhamhotels.com/content/About-Wyndham/#culture (last visited Jun 22, 2022)

[33] *Our Benefits,* WYNDHAM, https://careers.wyndhamhotels.com/content/Our-Benefits/?locale=en_US (last visited Jun 22, 2022)

[34] *Human Rights Statement*, http://q4live.s22.clientfiles.s3-website-us-east-1.amazonaws.com/153757806/files/doc_downloads/governance_documents/Wyndham-Hotel-Resorts-Human-Rights-Policy-Statement.pdf (last visited Jun. 15, 2022).

99.     Plaintiff incorporates each foregoing allegation.

100.    Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is entitled to bring a civil action under 18 U.S.C. §1595.

101.    Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595. Specifically, Defendants had a statutory obligation not to benefit financially or receive anything of value from a venture that they knew, or should have known, engaged in violating the TVPRA. At all relevant times, Defendants breached this duty by facilitating human trafficking through its participation in a commercial business venture which involved the harboring of Plaintiff and her trafficker for the purposes of commercial sex induced by force, fraud, or coercion.

102.    Defendants have benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, maintaining the loyal customer base that fuels the supply and demand of sex trafficking, and limiting mandatory regulations. Moreover, on each occasion they received payment for rooms or received payments or kickbacks for internet usage, Defendants directly benefitted from the sex trafficking of Plaintiff. The actions, omissions, and/or commissions alleged in this pleading were the "but for" and proximate cause of Plaintiff's injuries and damages.

103.    Plaintiff has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Bartonsville Howard Johnson by Wyndham.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff respectfully requests judgment as follows:

    a.  Awarding Plaintiff all available compensatory damages for each cause of action, including but not limited to past and future medical expenses; past and future lost

wages and loss of earning capacity; past and future emotional distress; consequential and/or special damages; all available noneconomic damages, including but not limited to pain, suffering, and loss of enjoyment of life;

b.  Disgorgement of profits obtained through unjust enrichment;

c.  Restitution;

d.  Statutory and/or treble damages, where available;

e.  Punitive damages;

f.  Attorneys' fees and expenses;

g.  The costs of this action;

h.  Pre- and post-judgment interest; and

i.  Any other relief the Court or jury deems appropriate.

### JURY DEMAND

Plaintiff hereby demands a trial by struck jury.

Respectfully submitted,

*/s/Prince P. Holloway*
Prince P. Holloway (209591)
Kevin P. O'Brien (313081)
**Stampone O'Brien Dilsheimer Law**
500 Cottman Avenue
Cheltenham, PA 19012
T: 215-663-044
E: pholloway@stamponelaw.com
Kobrien@stamponelaw.com

*/s/ Steven C. Babin, Jr. (Pro Hac Vice To Be Filed)*
Steven C. Babin, Jr. (0093584)
Jennifer J. El-Kadi (00100660)
**Babin Law, LLC**
65 East State Street, Suite 1300
Columbus, Ohio 43215

28

T: 614-761-8800
E: steven.babin@babinlaws.com /
Jennifer.elkadi@babinlaws.com /

Dated: October 6, 2023